222   CIRCUIT   COURT   REPORTS—NEW   SERIES.

North American Accident Ins. Co. v. Sickles. [Vol. II, N. S.

## FALSE ANSWERS IN AN APPLICATION FOR INSURANCE.

[Circuit Court of Lucas County.]

NORTH AMERICAN ACCIDENT INSURANCE CO. v. FRANKLIN D. SICKLES.

Decided, July 1, 1902.

*Insurance—Section 3625, Relating to False Answers in Application, Construed—What the Company Must Establish to Avoid the Policy —Authority Constituting a Solicitor an Agent.*

1. Under the saving provisions of Section 3625, an insurance company in order to avoid a policy, on the ground of false answers in the application, must establish clearly that the answers made by the insured were willfully false; that they were fraudulently made; that they were material; that they induced the company to issue the policy; that but for such answers the policy would not have been issued; and, that the agent of the company had no knowledge of the falsity or fraud of such answers.

2. Where a sub-agent, appointed by a general agent whose territory covers several counties, and who has authority to appoint sub-agents, solicits insurance, and fills in the application for a policy in the presence of the applicant, after a conversation with him disclosing all the facts bearing upon the statements to be made in the application, and the statements written in the application are the suggestion of said sub-agent, and there is reason to believe the facts were also all made known to the general agent, the knowledge of such sub-agent as to the extent the statements were false is the knowledge of the company.

PARKER, J.; HAYNES, J., and HULL, J., concur.

Heard on error.

This suit was begun by Franklin D. Sickles against the North American Accident Insurance Company on a policy of insurance on account of an accident which he averred had happened to him resulting in an injury, for and on account of which he claimed something less than $300. His action was commenced in the city and justice court of this city. He obtained judgment there against the insurance company, and the company appealed the case to the court of common pleas, where it was tried to a jury, resulting in a verdict in favor of the plaintiff for $237.72. Motion for a new trial was filed and overruled, and judgment was

entered upon the verdict, and the insurance company prosecutes error to this court to reverse that judgment.

It is averred in the petition that on June 27, 1900, the plaintiff was insured by this insurance company against accident and against bodily injury which the plaintiff might receive when caused solely by external, violent and accidental means; that the company agreed to pay him the sum of fifty dollars per week, not exceeding 104 weeks consecutively, where the injury which he might receive wholly and continuously disabled him from transacting any and every kind of business; that he paid the insurance premium required; that on September 6, 1901, while riding as a passenger upon a public conveyance, to-wit, a steamboat, on Lake Erie, he received bodily injuries, caused solely by external, violent and accidental means, in that he accidently fell in said boat and received such injuries as that immediately following the receipt thereof he was wholly and continuously disabled from transacting any and every kind of business up to and including October 5, 1900, to-wit, twenty-nine days, and was partially disabled from performing labor and transacting business from October 5 to October 9, to-wit, four days. The policy seems to have made provision for the payment of a smaller amount for the period that he was only partially disabled. The total amount of his claim was $221.34 and interest.

An answer was filed, and afterwards an amended answer, in which amended answer is averred that, ''previous to effecting said insurance, viz., on or about the twenty-seventh day of June, 1900, the said Franklin D. Sickles stated in an application upon which said policy was issued and which was the basis of and a part of the contract between this defendant and the said Franklin D. Sickles, amongst other things, the following: 'I am not carrying nor have I applied for any other accident insurance except the amount herein written.' Also the following: 'No accident insurance company or association ever rejected my application, canceled or requested the surrender of my certificate or policy, or declined to renew the same, except as herein written.' And also the following: 'I have never had paralysis, fits of any kind of brain disorder, diabetes, hernia, varicose veins or any bodily or mental infirmity, injuries or wounds, or suffered

the loss of a limb or an eye, nor has any application for life insurance ever been rejected, postponed or not acted upon, except as herein written.' '' And the defendant says "That said application contains no other statements concerning the aforesaid subjects therein by the said Franklin D. Sickles mentioned as aforesaid." And that "the plaintiff had been afflicted with paralysis, vertigo and other serious bodily infirmities and injuries, caused by a previous accident to him; that plaintiff was carrying other accident insurance and that he had been refused further insurance by other insurance companies to-wit, The United States Casualty Co. of New York city; that the aforesaid statements made by plaintiff in said application were willfully false and fraudulently made, were material to said risk, and induced said company to issue said policy, and that but for said statements said policy would not have been issued, and that neither said company nor its agents had knowledge of the falsity or fraud of said statements at or before the delivery of said policy."

These averments were denied by a reply, and upon these issues the parties went to trial.

It appeared upon the trial that this insurance was solicited by a Miss Dittenhaver, who claimed that she was representing the company, and that she brought to the plaintiff below the blank application and sat down with him to fill it out, and that a part of the writing in the application, or the most of it—and especially the parts relied upon here as a defense—were written by her after some discussion of the questions and the proper answers which would be made to the statements appearing in the application. The application is in somewhat peculiar form, perhaps not unusual—it is not in the form of questions and answers, but is rather in the form of affirmative statements, with blanks and provisions for exceptional or explanatory statements, the design apparently being that if there are no exceptional or explanatory statements required, nothing shall be written except the signature of the applicant for insurance. But when these persons sat down to make it out, to these affirmative statements they have added, where perhaps it was not necessary, certain negative and affirmative answers, as if the statements were rather questions than affirmative statements.

Those that are especially relied upon and discussed here are statements Nos. 10 and 15 in this application. No. 10 is: "I am not carrying nor have I applied for any other accident insurance, except amount herein written." That is printed in the application, and at the end of it is written the word "No." No. 15 reads: "I have never had paralysis, fits of any kind, or brain disorder, diabetes, hernia, varicose veins, or any bodily or mental infirmity, injuries or wounds, or suffered the loss of a limb or eye, nor has any application for life insurance ever been rejected, postponed or not acted upon, except as hereinafter written." And written below that is the word "No." The signature is that of the plaintiff, Franklin D. Sickles. It appears from the evidence that at the time this application was made out (about the twenty-fifth or twenty-seventh of June, it bears date the twenty-fifth) Dr. Sickles had a policy of like character in force with the United States Casualty Company, but that the policy would expire by limitaton upon the first day of July or the thirtieth day of June of that year. It appears that he stated this fact and that it was well understood by Miss Dittenhaver, who was assisting in the making out of this application, and who had solicited the insurance of the doctor. But it also appears that it was understood and contemplated between them that the new policy, that is to say the policy being applied for, would not take effect until after the expiration of the policy in the United States Casualty Company, and that this application was being made out in anticipation of the other policy expiring by limitation within a few days. Though this policy was in fact dated the same as the application, that was not according to the understanding or the contemplated action of the parties. The intention of the parties was to have one policy begin at the expiration of the other; the policy, however, was not delivered to the insured until the expiration of the policy in the United States Casualty Company. It also appears that during the period that the doctor was insured in the United States Casualty Company he received an injury through an accident, and that on account of this injury he received $137 by way of indemnity from the United States Casualty Company. This fact was not concealed from Miss Dittenhaver—she knew all about it—she

226 CIRCUIT COURT REPORTS—NEW SERIES.

North American Accident Ins. Co. v. Sickles. [Vol. II, N. S.

and the doctor talked about it, and the character of the injury that the doctor sustained upon that occasion appears to have been fully explained by the doctor to Miss Dittenhaver. She so testifies, and the doctor so testifies, and that is not denied; and in this application this appears under item 14: .

"I have never at any time received indemnity for disability or other loss, except as herein written."

And "No" is written at the end of that; and also this: "$137 in casualty."

Now there was some evidence introduced on behalf of the insurance company to show that the injury which the doctor received in this accident while he was insured with the casualty company was of the character of paralysis; that he fell, and as a result of the fall his lower limbs were affected by numbness and loss of motion and with a loss of control over them temporarily, and some of the physicians who testified state that this was in their opinion temporary paralysis; but there is no testi-like paralysis at the time he applied for this insurance in the mony tending to show that the doctor was afflicted with anything North American Accident Insurance Company, but the testimony that he had fully recovered from his former injury stands practically undisputed. As to whether the injury that he had received on this former occasion resulted in partial or temporary paralysis, there is some dispute and some doubt; some of the testimony tending to show that the result was simply a temporary numbness, not in that degree that could be fairly characterized as "paralysis." Now it is contended by the insurance company that since the facts which I have said were stated to Miss Dittenhaver—all these facts of the fall which resulted in numbness and disability, etc., were not set forth in this written application—therefore the insurance policy was null and void *ab initio*, and that they have made out their defense. And that contention is based somewhat upon the provisions of this application and the policy with respect to the character of these statements and representations and the effect that they shall have upon the insurance. I read from the application:

"I hereby apply for insurance in the North American Accident Insurance Company, to be based upon the following, viz.:

Classification of my occupation; the statement of facts herein, whether written or printed, in response to interrogatories or otherwise, all of which I warrant to be true and complete," etc.

And further, after the answers and before the signature, is this:

"This application, with its statements, stipulations and warranties, together with the premium paid by me, shall be the basis of and a part of the contract between the company and myself. I understand the classification of risks, and agree that for any injury, fatal or otherwise, received in any occupation, risk or exposure classed in the company's manual as more hazardous than the class named in the policy to be issued hereon, I, or my beneficiary shall be entitled to only such amount as the premium paid will purchase at the rate fixed for such increased hazard; I agree that the company shall not be bound by any knowledge of or statement made to or by any solicitor, unless written hereon; that I will notify the secretary should I hereafter procure additional accident insurance," etc.

It is contended by the insurance company that Miss Dittenhaver was not the agent of the company, but that even if she were the agent of the company, by reason of this stipulation of warranty and by reason of the further stipulations and agreements that the company was not to be bound by any knowledge of or statements to or by any solicitor, unless written herein; that they are not bound or affected by the oral statements of the doctor to Miss Dittenhaver, which were not written in the application. The policy contains this stipulation or agreement:

"In consideration of the warranties, stipulations and agreements contained in the application for this policy, which application is made a material part hereof, and of the premium of six dollars, does hereby insure," etc.

So that it will be seen that the application is made part of the policy as fully as the parties by their contract could make it a part.

It is contended on behalf of the defendant in error, however, that Section 3625, Revised Statutes, has an effect upon this contract; that the statute nullifies the stipulation that these answers shall be regarded as warranties and that the company is not to be bound by any knowledge of statements made to or by any

228   CIRCUIT COURT REPORTS—NEW SERIES.

North American Accident Ins. Co. v. Sickles. [Vol. II, N. S.

solicitor unless written upon the application. Before this section was made a part of the law, the case of *Insurance Co.* v. *Pyle*, 44 Ohio St., 19, was considered and decided by our Supreme Court, and it was held as follows:

"The provisions of a life insurance policy are construed and applied like the terms of any other contract, and such provisions may render the policy void *ab initio*, by the terms of the same and the failure of warranty.

"When a life policy is issued and accepted upon the expressed condition that the answers and statements of the application are warranted true in all respects, and that if the policy be obtained by any untrue answers or statement, or by any fraud, misrepresentation, or concealment, 'the policy shall be absolutely null and void;' and, as to matters material to the risk, some of the answers and statements are untrue in fact, though made without actual fraud and under an innocent misapprehension of the purport of the questions and answers, no contract of insurance is thereby made, and the policy does not attach, but it is void *ab initio*."

Subsequently this statute was passed, which provides as follows:

"No answer to any interrogatory made by an applicant, in his or her application for a policy, shall bar the right to recover upon any policy issued upon such application, or to be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is willfully false and was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and moreover, that the agent or company had no knowledge of the falsity or fraud of such answer."

It is contended, however, by the insurance company that this section does not apply where the parties expressly stipulate, as they have done in this case, that the answers are to be regarded as warranties and that the company shall not be bound by any knowledge of the statements made to or by the solicitors, unless written upon the application, but that it is intended to apply to cases where the contract is silent upon this subject.

In the case of *John Hancock L. Ins. Co.* v. *Warren*, 59 Ohio St., 45, it is held:

"Section 3625, Revised Statutes, is a valid constitutional enactment; and to constitute a defense to a policy of insurance by reason of false answers to questions in the application, it must be clearly proven that the answers to such questions were willfully false and were fraudulently made; that the same were material, and induced the company to issue the policy, and that but for such answers the policy would not have been issued; and that neither the company nor its agents had knowledge of the falsity or fraud of such answers at and before the delivery of the policy."

Which seems to amount to saying that it is a valid constitutional enactment, and means what it says, for this syllabus is practically a transcript of the statute. And we have this by the court, upon page 53:

"Section 3625 was in force at the time this policy of insurance was issued, and therefore the legal effect is the same as if the section was copied into and made a part of the policy."

And the same may be said, therefore, of the case at bar, to-wit: Section 3625 being in force at the time this application was written and at the time this policy was written and issued, it must be considered to have the same legal effect as if it was copied into and made a part of the policy. The court further says, on the same page:

"The case of *Insurance Co.* v. *Pyle,* 44 Ohio St., 19, was decided before this section was enacted, and therefore can not control the matter. This section was passed for the purpose of abrogating the rule laid down in that case."

Now it seems to us that the rule for which counsel for the insurance company is contending here is substantially and practically the rule laid down in the case of *Insurance Co.* v. *Pyle,* *supra,* and that it is a rule which the Supreme Court says has been abrogated, purposely, by Section 3625, Revised Statutes, and we think what was said by the Supreme Court in the case of *Insurance Co.* v. *Leslie,* 47 Ohio St., 409, 414, with respect to Section 3643, Revised Statutes, is applicable to life insurance companies and may be very properly said of this statute, viz.:

"The foregoing sections of the statute being in force when it [the policy] was issued, they entered into, and became part of

230   CIRCUIT   COURT   REPORTS—NEW   SERIES.

North American Accident Ins. Co. v. Sickles. [Vol. II, N. S.

the contract of insurance, fixing the measure of the obligation created by it, and controlling its construction and operation.''

And the following from page 417:

''The statute can not, we think, be treated as conferring upon the assured a mere personal privilege which may be waived or qualified by agreement. It has a broader scope. It moulds the obligation of the contract into conformity with its provisions, and establishes the rule and measure of the insurer's liability. Terms and conditions embraced in the policy inconsistent with the provisions of the statute are subordinate to it and must give way.''

It is true, as pointed out by counsel, that in this case of *Hancock L. Ins. Co.* v. *Warren, supra,* it was said by the court that the insurance company failed to allege that the answers to the questions were material, and without such allegation the answer failed to state a ground of defense, and it matters not how false or how fraudulent such answers may be, if they are not material, they furnish no ground for defense to the company issuing the policy. But, while this is said, the decision does not appear to be based upon that, and the law of the case, as we understand it, is what we find stated in the syllabus, which I have read. The court point out that they had not made a complete answer; that the answer perhaps is subject to demurrer—does not state a complete defense—yet the decision is not based upon that; and we can not see that if that matter had been stated in the answer it could in any way have affected or modified the statement of the law as given in the syllabus.

We hold, therefore, that it devolved upon the defendant to establish clearly that these answers made by the plaintiff were willfully false; that they were fraudulently made; that they were material; that they induced the company to issue the policy, and that but for such answers the policy would not have been issued, and, moreover, that the agent of the company had no knowledge of the falsity or fraud of such answers. We fail to find anything in this record that satisfies us, or that we think should satisfy any trier of the facts, that any of these answers or any of the omissions or statements by the way of explanation were fraudulently made or fraudulently omitted. The conduct of the

insured in this transaction appears to us, from the record, to have been entirely fairminded so far as we can see, and therefore we think that under the statute the mere omission of statements or a mere error in statements could not affect the validity of the policy; that the charge of the court upon this subject was correct; that the court was right in refusing to charge the several requests numbered 3, 4, 5 and 6 submitted on behalf of the insurance company.

We think, too, from a careful reading of this record (and I shall not stop to discuss the testimony or read it), that the jury was warranted in finding that Miss Dittenhaver was an agent of the insurance company; that William L. Hoyt, the general agent residing here—the general agent for Ottawa, Fulton, Henry, Sandusky and Lucas counties, had authority to appoint sub-agents, and those sub-agents, acting under his direction and supervision in soliciting insurance, represented the insurance company, and that to that state of facts the law as laid down in *Insurance Co.* v. *Williams*, 39 Ohio St., 584, is applicable, to-wit:

"A soliciting agent, procuring for an insurance company risks and applications on which policies are issued, who fills up the application, is, in so doing, the agent of the company and not of the insured; and if the agent make a mistake in wrongly stating facts which were correctly given him by the insured in preparing the application, the company is bound by and responsible for such mistake."

And we think that this last clause of Section 3625, Revised Statutes, to the effect that the mistakes, errors or even fraudulent statements in the application shall not vitiate the insurance if the agent or company had knowledge of the falsity or fraud of such acts, is applicable. The charge of the court upon that subject appears at page 44 of the record, and has our approval. It is as follows:

"There has been some discussion as to whether the lady who obtained this application from the plaintiff was an agent of the company within the meaning of this statute. On that subject I have this to say to you: If Mr. Hoyt, the district manager of this company here in Toledo, authorized her to obtain applications for policies, and the applications so obtained by her were

received by the manager and forwarded to the company, and policies were issued thereon by the company, then she was the agent of the company in taking such applications, and any knowledge on her part as to the falsity of the statements in the application, if there was such falsity, would be regarded as knowledge of the company.   If either of these statements was false and fraudulently made, and it is not clearly proved that neither the company nor the agent knew that it was false or fraudulent, then the defense is not made out.   But if each of the facts mentioned in the statute is clearly proved then the defense is made out, and the plaintiff is not entitled to recover.''

And we think the evidence in this case clearly establishes a state of facts which required the jury to give an affirmative answer to the proposition embodied in this charge, to-wit, that she had such authority and did exercise such function and was so recognized by Mr. Hoyt and the company as that she became the agent of the company.

Now, this is perhaps all that is necessary to be said to dispose of the questions raised here by the plaintiff in error, and yet we make this further remark upon the record: That we think from the evidence  the jury was fairly justified in finding—whether they did so find or not, of course we can not tell, because there was no special verdict—but they were fairly justified in finding that these facts with respect to the policy existing at the time this application was made, and with respect to the injury which the doctor had received and the compensation he had received on account of that injury, and the effects of the injury, were made known to Mr. Hoyt before this policy was delivered.   We think if the case were to rest upon that issue that it is fairly sustained by the insured, that  the burden being upon the insurance company, it has failed to establish that these facts were not made known to Mr. Hoyt before the policy was delivered.

Upon the whole, it seems to us that this verdict was right and that no error occurred upon the trial of the case prejudicial to the plaintiff in error, and that the judgment should be affirmed, and it is, therefore, affirmed.

*Chittenden & Chittenden,* for plaintiff in error.

*Orville S. Brumback,* for defendant in error.